UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN RICHARD GALLAGHER,
    *Petitioner*,

v.                                                               No. 3:18-cv-00461 (JAM)

D.K. WILLIAMS,
    *Respondent*.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Shawn Richard Gallagher has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his right to constitutional due process was violated when he was subject to loss of prison good time credits due to a positive drug test result. Because I conclude that Gallagher received due process, I will deny the petition for writ of habeas corpus.

### BACKGROUND

Gallagher is currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut, where he is serving a 120-month sentence for Possession with Intent to Deliver Oxycodone. Doc. #10-1 at 1–2. At the time of the alleged disciplinary infraction now at issue in this petition, Gallagher was living at the Coolidge House Residential Reentry Center ("Coolidge House") in Boston, Massachusetts, where he had been transferred from Danbury to serve the remainder of his sentence. *Id.* at 2. He was later transferred back to Danbury after the alleged disciplinary infraction. Doc. #12 at 2.

On June 1, 2017, a urine sample collected from Gallagher tested presumptively positive for amphetamine. Doc. #10-1 at 1–2. Several days later a toxicology drug test report confirmed the positive test result. *Ibid.* Gallagher was charged with use of drugs in violation of Code 112 of the Federal Bureau of Prisons Inmate Discipline Program. *Ibid.*

1

Mark Smith, an intake and release coordinator at Coolidge House, investigated the incident. Doc. #10-1 at 16. He read the incident report, which included a statement by the officer who wrote it, and he interviewed Gallagher. *Ibid.* During the interview, Gallagher told Smith that he had been prescribed Claritin D as a child and had continued to take it as an over-the-counter drug. *Ibid.* Gallagher said that a counselor at Hope House, a rehabilitation center in Boston, told him that Claritin D could cause a false positive urine test. *Ibid.*

Smith referred the charge to the Center Discipline Committee (CDC) for a hearing that took place on August 30, 2017. *Ibid.*; *id.* at 27–28. Gallagher was advised of his rights to be present and participate in the hearing, as well as his right to the assistance of a staff representative, which he waived. *Ibid.* He attended and denied the charge that he had used amphetamines. He stated that the urine test was a false positive caused by Claritin D. *Id.* at 2. After reviewing the incident report, the investigation report, the toxicology report, and other documents, the CDC chairperson found, based on the greater weight of the evidence, that Gallagher had commit the act charged. *Ibid.*

Gallagher appealed, and Anthony Amico, a Bureau of Prisons discipline hearing officer (DHO), reviewed the CDC decision. *Ibid.* He requested clarification from Coolidge House about Gallagher's claim that the urine test was a false positive. *Ibid.* Joseph Jarvis, a program administrator at Coolidge House and the chairperson of the CDC, sent Amico a two-sentence memo stating that on September 5, 2017, "I made contact with Alere toxicology. I had Mark Wuest, a toxicologist confirm that Claritin D would not cause a false positive on a UA toxicology report." *Id.* at 29. After reviewing this memo along with paperwork from the CDC hearing and Gallagher's disciplinary record, which included two recent disciplinary charges for using alcohol, Amico found that the CDC hearing was in substantial compliance with the Bureau

of Prisons due process protections, and that the CDC's findings were based on the greater weight of the evidence. *Id.* at 2–3.

On September 14, 2017, Amico certified the CDC hearing and imposed sanctions by signing the CDC hearing report. *Id.* at 14. The evidence listed under the heading "specific evidence relied on to support findings" included the initial incident report, Smith's investigation, the toxicology report, the statement from the toxicologist, and Gallagher's disciplinary record. *Ibid.*

Gallagher appealed the disciplinary finding to the Regional Director of the BOP and then to the BOP's Office of General Counsel. *Id.* at 3. The record reflects that Gallagher submitted additional documentation to support his claim that Claritin D may cause a positive test for amphetamine. *Id.* at 38–43. The appeals were denied. *Id.* at 3, 36, 47. As a result of the disciplinary finding, Gallagher lost 41 days of good conduct time that he had earned and 60 days of non-vested good conduct time. *Id.* at 3.

On March 19, 2018, Gallagher filed a *pro se* petition for writ of habeas corpus. Doc. #1. He claims that his right to due process was violated because he was wrongly disciplined on the ground of his lawful use of Claritin D and because the DHO gave too much weight to the findings of the CDC. Doc. #9 at 6–8; Doc. #12 at 2–3. He seeks expungement of his disciplinary record and restoration of 101 days of good time credit. *Id.* at 4.

## DISCUSSION

A prisoner may challenge the execution of his prison sentence by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of

which a person has been deprived, and if so we ask whether the procedures followed . . . were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

It is well-settled that prisoners enjoy a liberty interest in earned good time credit. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974)); *Walker v. Williams*, 2018 WL 264172, at *2 (D. Conn. 2018). Because it is clear that Gallagher lost earned good time credit as a result of the disciplinary charge against him, I conclude that he has a liberty interest at stake for purposes of his due process claim.

"The due process protections afforded a prison inmate do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution." *Sira*, 380 F.3d at 69 (quoting *Wolff*, 418 U.S. at 556). "Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Ibid.* Gallagher does not allege a violation of any of these due process protections.

Gallagher argues instead that the evidence was not sufficient to rebut his defense that the positive drug test result for amphetamine was because of his lawful use of Claritin D. Judicial review of the sufficiency of evidence to support a prison disciplinary action is limited to determining whether there is "some evidence" to support the action. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). As the Supreme Court has explained, "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but "[i]nstead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. This is an "extremely tolerant" standard that is satisfied if there is "*any* evidence

4

in the record that supports" the disciplinary decision, provided that the evidence is otherwise reliable evidence. *Sira*, 380 F.3d at 69; *see also Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).

I find that the "some evidence" standard is satisfied by Gallagher's positive test result, coupled with the opinion on further inquiry of the toxicologist that this test result was not attributable to the use of Claritin D. Even crediting Gallagher's claim that the use of Claritin D may cause a positive test result for amphetamine, the "some evidence" standard of review does not license a court to re-weigh the strength of the evidence that was before BOP disciplinary authorities. *See Jones-Heim v. Reed*, 241 F. App'x 359, 360–61 (9th Cir. 2007) (rejecting similar due process claim based on prisoner's claim that his prescription medication had caused false positive drug test result); *Martucci v. Hollingsworth*, 2016 WL 4134529, at *3 (D.N.J. 2016) (same); *Simmons v. Hobart*, 2006 WL 240290, at *4 (W.D. Wis. 2006) (same).

Gallagher further argues that the BOP's hearing officer gave too much weight to the conclusions of the CDC, which was comprised of persons at the Coolidge House residential reentry center who were not BOP employees or allegedly trained in BOP policy. Doc. #9 at 7–8, Doc. #12 at 3. The Due Process Clause, however, does not categorically prohibit a government official from relying on private personnel to conduct an investigation and hearing in accordance with the same procedural protections that the Constitution requires of governmental personnel. Accordingly, numerous courts have rejected the argument that a prisoner's due process rights are violated if the BOP imposes discipline based on review by a BOP disciplinary hearing officer of the investigation and findings by personnel at a BOP residential reentry center. *See Martucci*, 2016 WL 4134529, at *3; *Manfredi v. United States*, 2012 WL 5880343, at *5–7 (D.N.J. 2012) (collecting cases). Accordingly, I conclude that it was not improper for the BOP DHO to rely on the investigation of the CDC.

## Conclusion

The petition for writ of habeas corpus (Doc. #1) is DENIED. The Clerk is directed to enter judgment in favor of the respondent and close this case.

It is so ordered.

Dated at New Haven this 30th day of October 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge